STATE OF NORTH CAROLINA  BEFORE THE
DISCIPLINARY HEARING COMMISSION
OF THE
WAKE COUNTY NORTH CAROLINA STATE BAR
22 DHC 8

| THE NORTH CAROLINA STATE BAR, | |
|---|---|
| Plaintiff | |
| v. | **ORDER OF DISBARMENT** |
| KENNETH A. FREE, JR., Attorney, | |
| Defendant | |

This matter came before the undersigned Chair of The Disciplinary Hearing Commission pursuant to 27 N.C. Admin. Code 1B.0121(d) upon an affidavit of surrender of license executed by Kenneth A. Free, Jr. on 23 February 2023 and filed in the offices of the North Carolina State Bar on 23 February 2023. Plaintiff, the North Carolina State Bar, was represented by Leanor Bailey Hodge and Elizabeth S. Foley. Defendant, Kenneth A. Free, Jr. was represented by Alan M. Schneider.

Based upon the pleadings and the record, the undersigned makes the following:

### FINDINGS OF FACT

1. Plaintiff, the North Carolina State Bar (hereafter "State Bar"), is a body duly organized under the laws of North Carolina and is the proper party to bring this proceeding under the authority granted it in Chapter 84 of the General Statutes of North Carolina, and the Rules and Regulations of the North Carolina State Bar promulgated thereunder.

2. Defendant, Kenneth A. Free, Jr. ("Free" or "Defendant"), was admitted to the North Carolina State Bar in 1997, and is, and was at all times referred to herein, an attorney at law licensed to practice in North Carolina, subject to the laws of the State of North Carolina, the Rules and Regulations of the North Carolina State Bar and the Rules of Professional Conduct.

3. On 23 February 2023, the State Bar filed an amended complaint against Defendant, alleging that he committed violations of the Rules of Professional Conduct. The State Bar's amended complaint is incorporated by reference herein.

4. The conduct set out in the State Bar's amended complaint constitutes grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2).

5. Defendant has indicated his consent to disbarment by filing an affidavit of surrender with the Disciplinary Hearing Commission. The affidavit meets all requirements set forth in 27 N.C. Admin. Code 1B.0121(a)(1), (2), (3), (4) and (d).

Based upon the foregoing Findings of Fact, the undersigned makes the following:

## CONCLUSIONS OF LAW

1. 27 N.C. Admin. Code 1B .0108(a)(6) provides that the Chairperson of the Disciplinary Hearing Commission has the power and duty to enter orders disbarring members by consent.

2. Defendant's affidavit meets all of the requirements set forth in 27 N.C. Admin. Code 1B .0121(a)(1), (2), (3), (4) and (d) and the facts upon which the affidavit is predicated warrant Defendant's disbarment.

3. Defendant has acknowledged that the material facts and allegations upon which the State Bar's amended complaint, incorporated herein by reference, is predicated are true. The Chair finds that the misconduct alleged in the complaint has been established.

Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned Chair of the Disciplinary Hearing Commission enters the following:

## ORDER OF DISCIPLINE

1. The surrender of the license of Defendant, Kenneth A. Free, Jr., is hereby accepted.

2. Defendant is DISBARRED from the practice of law in North Carolina effective upon entry of this Order.

3. Defendant may complete any legal matters which were pending on the date of this order which can be completed within sixty days. Defendant has sixty days from the date of this order to comply with all of the duties set out in 27 N.C. Admin. Code 1B.0128.

4. The administrative fees and costs of this action are taxed against Defendant.

5. Within ten days of the date of this order, Defendant shall provide the State Bar with an address and telephone number at which clients seeking return of files can communicate with Defendant and obtain such files. Defendant shall promptly return all file materials to his clients upon request.

6. If Defendant fails to fully comply with 27 N.C. Admin. Code 1B.0128, he shall reimburse the State Bar for all expenditures made by the State Bar to protect the interests of Defendant's clients. Such expenditures may include, but are not limited to, storage facility fees, rent payments, moving expenses, charges for secure disposal of client files, postage or other mailing expenses, and compensation paid to a court-appointed trustee and/or the trustee's assistant for

time and travel associated with the trusteeship. The State Bar shall send an invoice for such expenditures to Defendant at his last known address of record with the North Carolina State Bar upon entry of an order discharging the trustee which Defendant shall pay within thirty days of the date the State Bar mailed the invoice.

This the 24th day of February, 2023.

*Stephanie Davis*

Stephanie Davis, Chair
Disciplinary Hearing Commission

STATE OF NORTH CAROLINA  
WAKE COUNTY

BEFORE THE  
DISCIPLINARY HEARING COMMISSION  
OF THE  
NORTH CAROLINA STATE BAR  
22 DHC 8

| THE NORTH CAROLINA STATE BAR, | |
|---|---|
| Plaintiff | |
| v. | AFFIDAVIT OF SURRENDER OF LAW LICENSE |
| KENNETH A. FREE, JR., Attorney, | |
| Defendant | |

KENNETH A. FREE, JR., being first duly sworn, deposes and says as follows:

1. I desire to resign and hereby tender my license to practice law in North Carolina and consent to disbarment.

2. My resignation and consent to disbarment is freely and voluntarily rendered. It is not the result of coercion or duress. I am fully aware of the implications of submitting my resignation.

3. I am aware that there is an amended complaint against me pending before the Disciplinary Hearing Commission alleging that I violated the Rules of Professional Conduct. A copy of the amended complaint is attached hereto as Exhibit A and is incorporated herein by reference.

4. I acknowledge that the material facts upon which the pending amended complaint is predicated are true.

5. I am submitting my resignation because I know that I could not successfully defend against these disciplinary charges.

THIS the 23rd day of February, 2023.

Kenneth A. Free, Jr.

I, JASON A. KNIGHT, Notary Public of the County of GUILFORD, State of North Carolina, certify that Kenneth A. Free, Jr. personally appeared before me this day, was sworn, and acknowledged the due execution of the foregoing Affidavit.

Sworn to and subscribed before me  
This the 23rd day of February, 2023.

Notary Public  
My Commission Expires: 10/19/2024

JASON A. KNIGHT  
Notary Public  
North Carolina  
Guilford County



STATE OF NORTH CAROLINA                BEFORE THE
                                       DISCIPLINARY HEARING COMMISSION
                                       OF THE
WAKE COUNTY                            NORTH CAROLINA STATE BAR
                                       22 DHC 8

| | |
|---|---|
| THE NORTH CAROLINA STATE BAR,<br><br>Plaintiff<br><br>v.<br><br>KENNETH A. FREE, JR., Attorney,<br><br>Defendant | AMENDED COMPLAINT |

Plaintiff, complaining of Defendant, alleges and says:

1. Plaintiff, the North Carolina State Bar ("State Bar"), is a body duly organized under the laws of North Carolina and is the proper party to bring this proceeding under the authority granted it in Chapter 84 of the General Statutes of North Carolina, and the Rules and Regulations of the North Carolina State Bar (Chapter 1 of Title 27 of the North Carolina Administrative Code).

2. Defendant, Kenneth A. Free, Jr., was admitted to the North Carolina State Bar on 12 December 1997, and is, and was at all times referred to herein, an attorney at law licensed to practice in North Carolina, subject to the laws of the State of North Carolina, the Rules and Regulations of the North Carolina State Bar, and the Rules of Professional Conduct.

3. During all or part of the relevant periods referred to herein, Defendant was engaged in the practice of law in Greensboro, Guilford County, North Carolina.

4. On or about 6 May 2020, Defendant opened First Bank trust account ending in no. 4120 ("the trust account") by depositing $100.00 of his personal funds into the account.

5. After opening the trust account and at various times from June 2020 through April 2021, Defendant served as escrow agent for United Med Test LLC ("UMT") and those with whom UMT did business in several transactions for sales of goods.

6. UMT was the seller in each of these transactions.

7. On or about 24 June 2020, UMT entered into a sales contract with By America for the sale of 565,500 3M N95 1860 masks.

8. UMT entered into a separate escrow agreement with Defendant and/or Defendant's firm in connection with the UMT – By America transaction ("By America Escrow Agreement").

9. As escrow agent, Defendant owed a fiduciary duty to By America and UMT.

10. By America relied on Defendant's fiduciary duty as escrow agent to ensure that the By America Escrow Funds were not disbursed to UMT until UMT performed as required by the sales contract and By America Escrow Agreement.

11. Pursuant to the By America Escrow Agreement, UMT was required to pay Defendant's escrow fee from UMT's net escrow proceeds.

12. By America was not responsible for payment of Defendant's escrow fee.

13. On or about 26 June 2020, pursuant to the sales contract between UMT and By America, Attorney Scott Cochran wired $1,500,000.00 ("By America Escrow Funds") into the trust account.

14. Other than the By America Escrow Funds, the only money in the trust account after deposit of the By America Escrow Funds was $109.80 that belonged to Defendant.

15. Pursuant to the By America Escrow Agreement, Defendant was required to maintain the By America Escrow Funds in the trust account until UMT delivered within five days of the contract the entire 565,000 of masks that were the subject of the sales contract.

16. UMT did not deliver the masks to By America as required by the sales contract.

17. In or about September 2020 and after the deadline stated in the sales contract, UMT delivered 92,640 masks to By America.

18. UMT did not deliver any of the remaining masks.

19. The balance of the By America Escrow Funds Defendant was required to return to By America given UMT's failure to deliver all the masks as required by the sales contract was $1,290,341.50.

20. Between June 2020 and September 2020, Defendant was required to maintain the entirety of By America Escrow Funds in the trust account. Therefore, pursuant to the By America Escrow Agreement, Defendant should have had in the

- 2 -

account all By America Escrow Funds when he was required to return a portion of such funds to By America.

21. The balance in Defendant's trust account between 1 September 2020 and 30 September 2020 ranged from a high of $51,074.80 to a low of $42.59.

22. By the time UMT delivered to By America any of the masks required by the sales contract, Defendant had already disbursed the majority of the By America Escrow Funds to others, including $20,000.00 to himself.

23. Prior to seeking return of the funds, By America did not authorize Defendant to disburse the $1,290,341.50 from the trust account.

24. Defendant was not entitled to the $20,000.00 of By America Escrow Funds he disbursed to himself.

25. Defendant knew he was not entitled to the By America Escrow Funds he disbursed to himself.

26. The other persons and entities to which Defendant disbursed By America Escrow Funds also were not entitled to such funds.

27. Defendant knew the other persons and entities to which he disbursed By America Escrow Funds were not entitled to such funds.

28. On or about 9 December 2020, Ghekko and UMT entered into an escrow agreement with Defendant and/or Defendant's firm in connection with a sales contract between Ghekko and UMT ("Ghekko Escrow Agreement") for the sale of masks.

29. On or about 11 December 2020, pursuant to the terms of the Ghekko Escrow Agreement, Ghekko wired $1,824,980.00 ("Ghekko's Escrow Funds") into Defendant's trust account.

30. Pursuant to the Ghekko Escrow Agreement, Defendant was required to maintain the Ghekko Escrow Funds in the trust account until the masks were shipped, at which time Defendant was authorized to disburse 50% of the Ghekko Escrow Funds to UMT.

31. As escrow agent, Defendant owed a fiduciary duty to Ghekko and UMT.

32. Ghekko relied on Defendant's fiduciary duty as escrow agent to ensure that the escrow funds were not disbursed to UMT until UMT performed as required by the sales contract and escrow agreement.

33. Pursuant to the Ghekko Escrow Agreement, Defendant was required to maintain the remaining 50% of the Ghekko Escrow Funds in the trust account until the

masks were delivered on or about 18 December 2020 following Ghekko's satisfactory inspection of the goods.

34. At the time of the Ghekko Escrow Agreement, Defendant knew UMT had failed to fully perform as required by its agreement with By America.

35. At the time of the Ghekko Escrow Agreement, Defendant also knew that he did not maintain in the trust account funds due to By America because he had previously disbursed such funds to himself and others. After deposit of the Ghekko Escrow Funds, Ghekko received a small portion of the goods UMT was required to provide pursuant to the sales contract.

36. Ghekko rejected these goods as nonconforming.

37. On 31 December 2020, which was after Ghekko's receipt of the nonconforming goods, the balance in the trust account was $842.86.

38. On or about 22 January 2021, the balance in the trust account dropped to $58.58.

39. Defendant disbursed most of Ghekko's Escrow Funds to others, including $16,000.00 to himself.

40. Ghekko did not authorize Defendant to release any of the Ghekko Escrow Funds.

41. Defendant knew he was not entitled to the $16,000.00 of Ghekko Escrow Funds he disbursed to himself.

42. The persons and entities to which Defendant disbursed the Ghekko Escrow Funds also were not entitled to such funds.

43. Defendant knew the other persons and entities to which he disbursed the Ghekko Escrow Funds were not entitled to such funds.

44. On or about 31 March 2021, UMT, as seller, entered into a sales contract with TNG Dx, LLC ("TNG"), as buyer, for the sale of 250,000 boxes of Cranberry Evolve Gloves, 300 per box.

45. Also, on or about 31 March 2021, TNG and UMT entered into an escrow agreement with Defendant and/or Defendant's firm in connection with the sales contract between TNG and UMT ("TNG Escrow Agreement").

46. As escrow agent, Defendant owed a fiduciary duty to TNG and UMT.

- 4 -

Case 1:23-mc-00006   Document 1   Filed 02/28/23   Page 8 of 14

47. TNG relied on Defendant's fiduciary duty as escrow agent to ensure that the By America Escrow Funds were not disbursed to UMT until UMT performed as required by the sales contract and TNG Escrow Agreement.

48. At the time of the TNG Escrow Agreement, Defendant knew UMT had failed to fully perform as required by its agreements with By America and Ghekko.

49. At the time of the TNG Escrow Agreement, Defendant also knew that he did not maintain in the trust account as required by the escrow agreements funds due to By America and Ghekko because he had previously disbursed such funds to himself and others.

50. Pursuant to the TNG Escrow Agreement, TNG wired into the trust account on or about 1 April 2021 $5,225,000.00 ("TNG Escrow Funds").

51. From on or about 22 January 2021 until deposit of the TNG Escrow Funds into the trust account, the balance in the trust account remained at $58.58, with the exception of a short period when the balance was $58.59.

52. After deposit of the TNG Escrow Funds, Defendant made several disbursements of the TNG Escrow Funds to others, including $30,000.00 to himself.

53. Defendant was not authorized to disburse the TNG Escrow Funds. He was required to maintain them in the trust account pursuant to the TNG Escrow Agreement.

54. Defendant was not entitled to the $30,000.00 of TNG Escrow Funds he disbursed to himself.

55. Defendant knew he was not entitled to the $30,000.00 of TNG Escrow Funds he disbursed to himself.

56. The other persons and entities to which Defendant disbursed the TNG Escrow Funds also were not entitled to such funds.

57. Defendant knew the other persons and entities to which he disbursed the TNG Escrow Funds were not entitled to such funds.

58. On or about 21 April 2021, UMT, as seller, entered into a sales contract with ReadyOne Industries, Inc. ("ReadyOne"), as buyer, for the sale of 500,000 boxes of Cranberry Evolve 300 nitrile gloves.

59. Also, on or about 21 April 2021, ReadyOne and UMT entered into an escrow agreement with Defendant and/or Defendant's firm in connection with the sales contract between ReadyOne and UMT ("ReadyOne Escrow Agreement").

60. As escrow agent, Defendant owed a fiduciary duty to ReadyOne and UMT.

61. ReadyOne relied on Defendant's fiduciary duty as escrow agent to ensure that the ReadyOne Escrow Funds were not disbursed to UMT until UMT performed as required by the sales contract and ReadyOne Escrow Agreement.

62. At the time of the ReadyOne Escrow Agreement, Defendant knew UMT had failed to fully perform as required by its agreements with By America, Ghekko, and TNG.

63. At the time of the ReadyOne Escrow Agreement, Defendant also knew that he had failed to maintain in the trust account as required by the escrow agreements funds due to By America, Ghekko, and TNG because he had previously disbursed such funds to himself and others.

64. Pursuant to the ReadyOne Escrow Agreement, Defendant's escrow fee was to be paid by UMT.

65. The ReadyOne Escrow Agreement provided specifically that Defendant's escrow fee "shall not be paid from the Escrow Funds."

66. Pursuant to the ReadyOne Escrow Agreement, ReadyOne wired into the trust account on or about 21 April 2021 $5,975,000.00 ("ReadyOne Escrow Funds").

67. Defendant was required to maintain the ReadyOne Escrow Funds in the trust account until both ReadyOne and UMT provided written instructions to release the funds.

68. If ReadyOne did not provide such written instruction to release the funds within five business days of the initial deposit, Defendant was required to return the ReadyOne Escrow Funds to ReadyOne.

69. ReadyOne did not, at any time, provide written instruction to Defendant to release the ReadyOne Escrow Funds.

70. On or about 23 April 2021, Defendant disbursed $5,225,000.00 to Sills Cummis & Gross PC ("SCG") in purported return of the TNG Escrow Funds.

71. At the time Defendant disbursed funds to SCG, the balance of TNG Escrow Funds in the trust account was only $1,555,948.58, which was the balance of funds in the trust account before deposit of the ReadyOne Escrow Funds.

72. The additional funds Defendant disbursed to SCG on behalf of TNG belonged to ReadyOne.

73. Defendant was not authorized to disburse the ReadyOne Escrow Funds to SCG.

74. TNG was not entitled to the ReadyOne Escrow Funds.

75. Defendant knew TNG was not entitled to the ReadyOne Escrow Funds.

76. On or about 27 April 2021, after Defendant had disbursed a portion of the ReadyOne Escrow Funds to SCG, Defendant falsely suggested to ReadyOne that he maintained the full amount of ReadyOne Escrow Funds in the trust account and was awaiting bank approval to disburse such funds to ReadyOne.

77. On or about 7 May 2021, ReadyOne wrote Defendant officially demanding return of the ReadyOne Escrow Funds.

78. On or about 10 May 2021 and after receipt of ReadyOne's 7 May 2021 letter, Defendant disbursed $20,000.00 of the ReadyOne Escrow Funds to himself.

79. Defendant was not authorized to disburse these funds to himself.

80. Defendant knew he was not entitled to the portion of ReadyOne Escrow Funds he disbursed to himself.

THEREFORE, Plaintiff alleges that Defendant's foregoing actions constitute grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2) in that Defendant violated the Rules of Professional Conduct as follows:

a) By knowingly and willfully disbursing a portion of the By America Escrow Funds to himself, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b), and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

b) By knowingly and willfully disbursing a portion of the By America Escrow Funds to other persons and entities that were not entitled to such funds, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b), and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

c) By knowingly and willfully disbursing a portion of the Ghekko Escrow Funds to himself, Defendant failed to properly maintain

- 7 -

and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b); and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

d) By knowingly and willfully disbursing a portion of the Ghekko Escrow Funds to other persons and entities that were not entitled to such funds, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b), and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

e) By knowingly and willfully disbursing a portion of the TNG Escrow Funds to himself, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b); and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

f) By knowingly and willfully disbursing a portion of the TNG Escrow Funds to other persons and entities that were not entitled to such funds, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b), and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

g) By knowingly and willfully disbursing a portion of the ReadyOne Escrow Funds to himself, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b); and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c);

h) By knowingly and willfully disbursing a portion of the ReadyOne Escrow Funds on behalf of TNG, Defendant failed to properly maintain and disburse entrusted funds in violation of Rule 1.15-

2(a), (k), and (n); committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in violation of Rule 8.4(b); and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c); and

i) By falsely suggesting to ReadyOne that he maintained the full amount of ReadyOne Escrow Funds in the trust account after he had already disbursed a portion of such funds to himself and SCG on behalf of TNG, Defendant engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on his fitness as a lawyer in violation of Rule 8.4(c).

WHEREFORE, Plaintiff prays that:

(1) Disciplinary action be taken against Defendant in accordance with N.C. Gen. Stat. § 84-28, as the evidence on hearing may warrant;

(2) Defendant be taxed with the administrative fees and costs permitted by law in connection with this proceeding; and

(3) For such other and further relief as is appropriate.

This the 23rd day of February 2023.

Leanor Bailey Hodge, Deputy Counsel
State Bar No. 27253
Elizabeth S. Foley, Deputy Counsel
State Bar No. 54825
The North Carolina State Bar
P.O. Box 25908
Raleigh, NC 27611
919-828-4620
*Attorneys for Plaintiff*

Signed pursuant to 27 N.C. Admin. Code 1B
§ .0113(m) and §.0105(a)(10).

Kevin G. Williams, Chair
Grievance Committee